**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 14-cv-5588** |
| **ALDEN ESTATES OF NAPERVILLE, INC.** | ) ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on disability and to provide appropriate relief to Kathleen Parker ("Parker"), a qualified individual with a disability, who was adversely affected by such practices. Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC"), alleges that Defendant, Alden Estates of Naperville, Inc. Corp. ("Defendant" or "Alden Estates"), violated the ADA by firing Parker because of her disability or because it perceived her to be disabled.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Illinois.

## PARTIES

3.      Plaintiff, the EEOC, is the agency of the United States of America charged with administering, interpreting and enforcing Title I of the ADA, and is expressly authorized to bring this suit by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Alden Estates has continuously been an Illinois corporation doing business in the State of Illinois and the City of Naperville, and has continuously had at least 15 employees.

5.      At all relevant times, Alden Estates has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.      At all relevant times, Alden Estates has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.      More than 30 days before the institution of this suit, Parker filed a charge with the EEOC alleging that Alden Estates violated Title I of the ADA.

8.      On September 25, 2013, the EEOC found reasonable cause to believe that Alden Estates discriminated against Parker in violation of the ADA.

9.      The conciliation efforts required by law have occurred and were unsuccessful.

a)      On September 25, 2013, the EEOC issued to Alden Estates a Letter of Determination inviting it to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

2

b)      On October 29, 2013, the EEOC issued to counsel for Alden Estates a Notice of Failure of Conciliation advising it that despite its efforts the EEOC was unable to secure a conciliation agreement acceptable to the Commission.

10.     Since at least January 2013, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b), by discharging Parker because of her disability.

11.     Parker has a physical impairment, monoclonal gammopathy of undetermined significance (MGUS), a condition in which an abnormal protein is in the blood.  In Parker's case, her condition will likely lead to multiple myeloma, a form of cancer. This impairment, which substantially limits her in the major life activity of the operation of her circulatory system, constitutes a disability under § 3 of Title I of the ADA, 42 U.S.C. § 12102.

12.     Defendant regarded Parker as having a disability as defined by the ADA, 42 U.S.C. § 12012(1)(C), 3(A), in that it fired her because of her physical impairment.

13.     Parker is a qualified individual with a disability and she could perform the essential functions of her job of admissions director with or without a reasonable accommodation.

14.     Towards the end of November, 2012, Parker began experiencing memory loss, the inability to concentrate, and unexplained weight loss. When her symptoms worsened, Parker went to the emergency room on December 4, 2012.

15.     On or about December 14, Parker emailed Defendant's Human Resources department to notify Defendant that she had been scheduled for tests on December 17 and 18 and that, if the test results were abnormal, she would be scheduled for a biopsy.  On December 19,

2012, Parker emailed Defendant's Administrator, informing her that her doctors believed she might have an autoimmune disease or cancer.

16.     Parker applied for leave under the Family and Medical Leave Act ("FMLA") on or about December 19, 2012. As part of her FMLA submission, Parker attached a Certification of Health Care Provider which indicated that she had been treated by her doctor on December 5 and December 10 and that she had an "undiagnosed thyroid condition." The Certification also stated that Parker was experiencing the following symptoms: "unable to walk at length, concentrate, short of breath, confusion, lightheaded, dizzy, rapid weight loss."

17.     On or about December 26, 2012, Defendant notified Parker that her request for FMLA leave had been denied because she had not been employed for the requisite 12- month period.  On that same date, Defendant's acting administrator informed Parker that Defendant required that her doctor provide an exact date of her anticipated return to work. Later that same day, Parker called the acting administrator and left her a voicemail informing her that her return to work date was January 14, 2013, per her doctor.

18.     The next day, December 27, 2012, Parker scanned the doctor note providing the January 14, 2013 return to work date and emailed it to Defendant's Human Resources department, asking that the note be forwarded to the acting administrator.

19.     Later on or about December 27, Defendant's acting administrator called Parker and told her that Defendant would no longer hold her position open. When Parker asked if she was fired, Defendant's acting administrator told her that if/when she could return to work, she was welcome to apply for other positions. Parker then asked whether, if Defendant had not found anyone to replace her by January 14, 2013, she could take her position back.  Defendant's acting administrator told her simply that she could apply for "other positions."

4

20.     Parker's termination date was January 7, 2013.  Her position was offered to her replacement on or about January 13, 2013 – the day before Parker was scheduled to return to work.

21.     The effects of the practices complained of in Paragraphs 14-20 above have been to deprive Parker of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

22.     The unlawful employment practices complained of in Paragraphs 14-20 above were intentional and were carried out with malice and/or reckless indifference to the federally protected rights of Parker.

23.     The effects of the practices complained of in Paragraphs 14-20 above have been to inflict emotional pain, suffering, and inconvenience upon Parker and deprive her of the financial and other benefits of working for Defendant.

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Alden Estates, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of disability.

B. Order Alden Estates to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Alden Estates to make Parker whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary

to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement or front pay.

D.   Order Alden Estates to make Parker whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and medical expenses, in amounts to be determined at trial.

E.   Order Alden Estates to make Parker whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, and mental anguish, in amounts to be determined at trial.

F.   Order Alden Estates to pay Parker punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,


P. DAVID. LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

Equal Employment Opportunity Commission
131 M Street, NE
Washington, DC  20507

s/ John C. Hendrickson_____
John C. Hendrickson
Regional Attorney

s/  Diane I. Smason_____
Diane I. Smason
Supervisory Trial Attorney

s/   Jeanne B. Szromba
Jeanne B. Szromba
Trial Attorney